260

JOE PETERSON, a/k/a TONY BAILEY, Claimant, v.
THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 6, 1992.*

*Order filed December 18, 1992.*

ROBERT M. HODGE, for Claimant.

ROLAND W. BURRIS, Attorney General (GREGORY ABBOTT, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

Claimant, Joe Peterson, filed his complaint in the Court of Claims on November 14, 1988. He seeks damages against the State for injuries he received while working as an inmate roofer at the prison at Stateville in August of 1988.

The case was tried by the commissioner assigned to the case. The evidence consists of the transcript of Claimant's deposition, a medical report, and an inmate injury report, all of which were stipulated into evidence by the parties. The Claimant, after trial, has sought to introduce

a group of photographs of Claimant to show the injury to the arm. The motion to admit Claimant's Group Exhibit No. 4 is allowed and the photographs will be considered as evidence in the case. The State presented no evidence. The Claimant filed a brief. The State failed to file a brief.

## The Facts

Claimant was an inmate at Stateville penitentiary in the Illinois Department of Corrections in August of 1988. Claimant is also known as Tony Bailey. On August 22, 1988, Claimant was working as a roofer on a roofing job at Stateville penitentiary. He had been working this job approximately 1½ months, but had no previous experience with roofing work prior to his incarceration. His foreman on the job was Jim McClure. The Claimant's job was to pull buckets of hot tar up to the roof with a pulley at the edge of the roof and then carry the buckets and pour those buckets into a larger bucket some six feet from the pulley. On this roof job, Claimant was on the roof. This was only his second roof job. On the first roof job, he had done most of his work while on the ground. Securing the pulley to the roof were rolls of tar paper which would eventually be used for the roofing job itself.

On the day in question, the Claimant took a five-gallon bucket of hot tar from the pulley and started to walk the six feet to the larger bin. As he lowered the bucket of tar and began walking, the bucket hit a roll of tar paper which was out of position and which was approximately four or five inches off the ground. Claimant saw the roll of tar paper just before he hit it with the bucket. Upon contact, the bucket forced some of the tar into the air, hitting the Claimant on the hand and arm and causing scarring of his right arm. He was wearing gloves at the time. Claimant admitted that he did not bother to look at

the particular spot where he lowered the bucket. He was looking at his foreman. Further, the roll of tar paper was only two or three inches away from the bucket stand.

After Claimant was splattered with the hot tar, the foreman put Claimant's arm in a bucket of cold water. He was then taken to the hospital. The tar, which attains temperatures of 550°, was scraped off Claimant's arm and they put cream on the injury. He was told it was a third-degree burn. Claimant went to the infirmary a few times over the next month for treatment. He had pain and was given Motrin. His wound was also redressed. Once in a while, Claimant's hand shakes, but there was no medical evidence relating this condition to the tar accident. The pain stopped eventually after two or three weeks. The Motrin helped with the pain. Claimant incurred no doctor bills. Claimant has various burn-mark scars on his right arm between the wrist and elbow, primarily on the inside of his arm. They range anywhere from three to four inches and are in various shapes. The medical progress notes substantiate Claimant's injuries and pain.

## The Law

The Department of Corrections has a duty to supervise the work of inmates in State penitentiaries and to provide inmates with safe conditions in which to perform their assigned work and to provide inmates adequate work tools. (*Hughes v. State* (1984), 37 Ill. Ct. Cl. 251.) The supervisory personnel of the roof work should have known that pulling hot tar on a pulley and carrying the 550° tar in open buckets presented a dangerous condition to Claimant. Having tar paper lying out of position on the roof presents an even more dangerous condition. (*Reddock v. State* (1978), 32 Ill. Ct. Cl. 611.) An inmate of a penal institution does not have the liberty of choice available to

a person in private industry and must work under conditions that are assigned to him. This Court has recognized that an inmate of a penal institution is not ordinarily free to refuse to perform a task even if he considers his working conditions unsafe. (*Reddock v. State* (1978), 32 Ill. Ct. Cl. 611.) The Claimant was new to roofing work. The tar paper that was hit by the bucket, causing the hot tar to splash on Claimant, was out of place. We find that Claimant has proven that Respondent failed to provide Claimant with a safe environment in which to perform his assigned tasks. Claimant, however, has failed to show his freedom from contributory negligence. Claimant admitted he did not look where he was putting the bucket down. We find comparative negligence at 40% on the part of Claimant. Claimant had some pain for two to three weeks. The Motrin helped the pain. Claimant does have some scarring on his arm. There is no competent proof of permanent injury which would affect Claimant's ability to work. (*Hughes v. State* (1984), 37 Ill. Ct. Cl. 251.) We find that, due to Respondent's negligence, Claimant was damaged in the amount of $1,500, but that the award should be reduced to $600 due to the negligence of Claimant.

It is therefore ordered that the Claimant be granted an award in the amount of $600.

## ORDER

FREDERICK, J.

This cause coming on to be heard on the motion of Claimant to correct award, and the Court being fully advised in the premises;

It is hereby ordered that Claimant's motion to correct

the award is granted. Claimant is awarded $900 and the prior award of $600 is vacated.