(No. 91-CC-1477–

ROBERT LUCIUS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 15, 1996.*

ROBERT M. HODGE, for Claimant.

JIM RYAN, Attorney General (BRIAN FARLEY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

The Claimant, Robert Lucius, filed his claim sounding in negligence in the Court of Claims on November 29, 1990. Claimant, who was at the time of the occurrence an inmate in the Illinois Department of Corrections, alleged that he suffered injury while working at the Vandalia Correctional Center farm in September of 1990. The Claimant seeks damages in the amount of thirty thousand dollars ($30,000).

The Commissioner set the cause for trial on May 11, 1993. Two days prior to trial, the Respondent filed a motion to dismiss alleging Claimant's failure to exhaust his remedies pursuant to section 790.60 of the Court of Claims Regulations, 705 ILCS 505/25. Pursuant to section 790.90 of the Court of Claims Regulations, failure to exhaust remedies shall be grounds for dismissal. The Court denied the motion to dismiss on June 25, 1993, because the record before the Court was insufficient to grant the motion. The motion to dismiss was not supported by affidavit. The record at that time was bare as to whether there was an available administrative remedy for Claimant's injury. The record was bare as to whether there was an alleged known tortfeasor. If the Respondent had filed an affidavit indicating that there was a known alleged tortfeasor and some facts to show some negligence on the part of the known tortfeasor, the claim would have been dismissed at that time. The Court did order that the Respondent could raise the issue of exhaustion of remedies at trial. The Court, in numerous decisions, has required that the remedy be a real remedy. The court has required there be an alleged known tortfeasor for Claimant to sue.

At trial, Claimant testified that during the summer of 1990, he was an inmate of the Illinois Department of

Corrections and was assigned to work at the farm at Vandalia Correctional Center. In August of 1990, he was a member of a four-man crew assigned to bundle and load bales of freshly cut hay. The crew's supervisor, Ed Bowman, was a State of Illinois employee who, at times, accompanied the crew out in the field.

The four-man crew was composed of inmates. One inmate drove the truck, one inmate stacked the bales of hay in the tractor, and Claimant and another inmate threw the bales onto the tractor. Claimant testified that he had never received any training for this job. The inmate driver was named James Maxwell. Inmate Robert Hayes threw the hay up on the trailer and inmate Clyde Dubose stacked the bales on the trailer.

The truck trailer was about 25 to 30 feet long with two wheels on each side in the middle of the trailer. The wheels on each side were about one and one-half feet apart.

Claimant testified that he had previously complained to Supervisor Bowman that the inmate driving the truck was driving too fast. Claimant stated that one week prior to the incident of Claimant's injury, another inmate's foot was run over by the same driver. Claimant further stated that no action was taken in regard to the complaints against the driver by Supervisor Bowman.

On September 4, 1990, the day of the incident, the Claimant testified that he began work at 7:00 a.m. and that he was wearing State issue work boots. He further explained that, in the beginning, the crew loaded the hay on the rear end of the trailer but as the trailer filled up, it became necessary for the Claimant to step in front of the trailer wheels to load the hay onto the trailer. Claimant had to stand between the tractor and the two wheels on

the flat bed. He testified that he asked the inmate driver, James Maxwell, to slow down several times but that Claimant's requests were ignored.

Claimant stated that as James Maxwell proceeded to drive the truck and trailer, Claimant and inmate Robert Hayes, would throw the bales of hay up onto the truck. Claimant testified that it was necessary to put his foot in front of the tire to throw the 80 to 100 pound bale up onto the truck and then he had to quickly move out of the way. At approximately 3:45 p.m., the incident occurred. Claimant stated that he threw a bale of hay up onto the truck and he wasn't able to move out of the way quickly enough. Both trailer wheels ran over the Claimant's ankle. It was necessary for the driver to back the trailer up to release the Claimant's ankle from underneath the second tire.

Claimant was treated at the infirmary and an x-ray revealed a fracture. He was transferred to the hospital in Centralia the following day. At Centralia, Claimant was given a walking cast and returned to non-working status at Vandalia. Claimant took Motrin for pain four times a day for one week. The cast remained on for approximately three months and Claimant relied on crutches for six months. Claimant testified that he had pain at the time of, and immediately following, the incident. He also described pain for the three months following the incident. Claimant reported some lost range of motion in the ankle and that activities such as baseball have been limited.

Claimant was released from the Illinois Department of Corrections in January, 1991, and at the time of the hearing was employed as a handler for the U.S. Postal Service.

Claimant testified that he had not filed a grievance with the Illinois Department of Corrections and that he had

not sued the inmate driver of the truck. Claimant submitted a group exhibit consisting of the incident report and medical records. Respondent did not present any witnesses.

## The Law

This Court has consistently held that the exhaustion of remedies provisions of the Court of Claims Regulations are an inescapable requirement. (*Burns v. State* (1990), 43 Ill. Ct. Cl. 323; *Boe v. State* (1984), 37 Ill. Ct. Cl. 72.) In the instant case, it is clear that inmate James Maxwell injured Claimant through his negligence or willful misconduct and Claimant failed to sue Mr. Maxwell. Claimant was aware of the identity of the driver of the vehicle and chose not to sue him. We cannot presume Mr. Maxwell to be judgment-proof without any evidence presented by Claimant. It was, therefore, incumbent on Claimant to exhaust his remedies against James Maxwell before seeking final disposition of his claim in this Court. *Patton v. State* (1988), 41 Ill. Ct. Cl. 77.

Claimant argues that the Court has allowed claims without enforcing the exhaustion of remedies requirement for inmate claims of work-related injuries where another inmate was negligent but the proximate cause of the injury was the Respondent's failure to supervise. Claimant cites *Hughes v. State* (1984), 37 Ill. Ct. Cl. 251 and *Tucker v. State* (1989), 42 Ill. Ct. Cl. 72 as authority. *Hughes, supra,* is distinguishable in that there was no evidence that the other inmates were negligent and the proximate causes of Hughes' injury were the lack of supervision and the faulty equipment provided by the State. *Tucker, supra,* is also distinguishable. In that case, the State's farm superintendent ordered Tucker to sit on the front of a tractor as it was driven down a road the superintendent knew was in poor condition. There was also no evidence the driver was negligent.

In the present case, the proximate cause of Claimant's injury was the fast driving of James Maxwell and his failure to slow the vehicle after Claimant requested he slow down. Claimant also exhibited some comparative negligence. While the lack of supervision by the State is a factor, the negligence of James Maxwell was the proximate cause of Claimant's injury. Under these circumstances, Claimant should have sued James Maxwell and had the claim against Respondent placed on general continuance. This he did not do.

For the foregoing reasons, it is the order of the Court that Claimant's claim be and hereby is denied.